Good afternoon. May it please the court. My name is Tenille Chekovich and I'm from the Richmond office of McGuire Woods. I'm here today with my colleague Michael Stark and together we represent the appellant Adrian King, Jr. on a pro bono basis. In Hudson v. Palmer, Chief Justice Berger reminded us that the way a society treats those who have transgressed against it is evidence of the essential character of that society. This case involves allegations that Mr. King's constitutional rights were violated by prison officials when he was coerced into consenting to a medically unnecessary surgery to remove his penile implants. The fundamental dispute between the parties boils down to a disagreement over the meaning of consent and whether Mr. King has alleged sufficient facts to demonstrate a lack of security interest in this case. I'd like to begin by discussing Mr. King's allegations in the context of his Fourth Amendment claim because that claim provides opportunities for us to discuss both the central issues of consent as well as the purported security interest. In the context of Mr. King's Fourth Amendment claim, this court's inquiry turns on whether Mr. King alleges a justifiable, reasonable, or legitimate expectation of privacy that's been invaded by government action. Although this court has not directly addressed this question, the Fourth Amendment protects prisoners' bodily integrity from unreasonable intrusions and prisoners retain an interest in their bodily privacy after the Hudson case based on the Supreme Court's decision in Bell v. Wolfish. In fact, the parties here agree that the Bell test for reasonableness under the Fourth Amendment should be applied. That test requires a balancing of the need for the particular search against the invasion of personal rights that the search entailed. Importantly, under the Supreme Court's decision in Winston v. Lee, a body search requires a more substantial justification than other searches. King's allegations that he was coerced to have surgery to remove his penile implants, which pose no security threat as he has alleged it, are sufficient to state a claim for relief under the Bell test that is plausible on its face. Indeed, all of the Bell factors except the place of the search weigh in favor of finding the search was unreasonable here. Looking at the scope of the intrusion, it's significant. The coerced surgery involved an under-the-skin invasion of the most private area of King's body, which was cut open. The procedure is far more intrusive than other procedures that courts have deemed highly invasive and unconstitutional, like the forcible stomach pumping that the Supreme Court found shocked the conscience and was too close to the rack and screw to survive scrutiny in Roshan. The procedure alleged by King is not like the needle used to draw blood in Schmerber v. California. Ms. Chekovich, do you mind if I jump to another claim? Okay, absolutely. Help me with the equal protection claim. Okay, the 14th Amendment claim. Yes. In that claim, Mr. King alleges that he was discriminated against on the basis that he was anonymous. Specifically, in that claim, he has to show that he was treated unequally, and that was the result of discriminatory animus. Here, he has alleged factually that several other inmates were allowed to retain their implants, but he was not. And he has alleged numerous facts that, taking the inferences in his favor, would tend to show that, in fact, there was discriminatory animus. Specifically, he first alleges that correction staff became aware of the implants when another inmate reported that he was engaged in what appeared to be homosexual activity with another inmate, that the two inmates were implanting marbles in their penises. He also alleges that the forced surgery gave the impression that he had been caught in a and that he, quote, had to have his marbles removed because of that act. He alleges that corrections officers made, quote, homosexual remarks that entail my marbles when they see me, and that staff gossiped and made comments on his sexuality in the presence of other inmates. Officers' comments were such... Is that pre or post-surgery? Well, the record isn't entirely clear about when the comments were made. Certainly, the initial incident where the two men were found in the cell by staff, that certainly occurred before the surgery. I know that the defendants argue that these comments are made post-surgery. In some ways, that would make sense because, of course, he was placed in segregation. So he wouldn't have had the opportunity to be in the general population and have these comments. My recollection or understanding was that the discriminatory acts took place after he was placed in administrative segregation and after he had surgery. Well, when he was initially found in what he describes as what was perceived as homosexual activity, that was prior to the surgery. That was the event where he and the other inmate were found in the cell and CO Moosey informed them that they had to report to medical. That, of course, happened before he was placed in segregation. That's the event that sort of kicks everything off. Much of the commentary that he alleges no doubt happened after he was placed in segregation and then had the surgery. But the fact that they're making those remarks, I think the fair on this motion to dismiss is that they were they continue to display that discriminatory animus and they were motivated by that at the time. Do you have other questions on the Fourth Amendment or the 14th? I guess I will go back to my Fourth Amendment argument. In particular, I wanted to discuss with you the issue of coercion with respect to the manner of search. Defendants primary argument with respect to the manner of the search here is that his consent weighs in favor of finding the search reasonable. But where there is coercion, there simply cannot be consent. When the state is attempting to justify a constitutional violation on the basis of consent, it has to demonstrate that the consent was voluntarily given and not the result of duress or coercion. And this standard has been applied to individuals in government custody. It's a fact intensive inquiry where you look at all of the circumstances of the individual consent. And in this case, Mr. King has alleged that his consent was the result of coercion and intimidation on the part of the prison officials. The courts typically would turn a critical eye towards this, what actions may truly be considered voluntary when dealing with prisoners claims in this context. And that's because we recognize that where a prisoner's freedom to act on his own and protect his own interests has been limited by his incarceration, and there's a corresponding increase in the control by the state, then we need to look carefully at those allegations that prisoners have been coerced in order to preserve their will. Here, there are allegations that specifically show coercion. King alleges that defendants used threats of segregation until his discharge date and physical violence to intimidate him into consenting. He alleges that he was threatened specifically by Deputy Warden Rosencrantz with segregation until he had his implants removed. He alleges that Defendant Thompson threatened him about placement at Mount Olive and that he would it's evident that the corrections staff are alleged to have coerced King into consenting to the surgery. So King's claims cannot be barred by that alleged consent. And that would bring me to the third factor under the Fourth Amendment analysis, which also bleeds into each of his other claims, and that is the lack of justification for the surgery. Here, it's clear that King has surgery. Two medical professionals, a nurse at the facility and also the doctor at the hospital, examined him and confirmed that the implants were not recently done and there was no infection or other medical reason to have the surgery. In light of the absence of that medical justification, the defendants speculate that if they're not permitted to force surgical removal of implants like these, free citizens apparently anticipating future incarceration will surgically implant items like razor blades, handcuff keys, or drugs beneath their skin. According to the defendants, segregation of Mr. King or removal of his implants was the only reasonably available option in dealing with that security risk. But contrary to their arguments, King alleges facts sufficient to show there was no legitimate security interest in requiring or compelling the surgery here. First, King alleges he had the implants professionally inserted prior to his incarceration and that they were stimulation aids. He specifically alleges the nature of the implants, two small surgical marbles. He alleges he was incarcerated for nearly a year before anyone even noticed and certainly without incident. The inmate who reported King to staff specifically told them that King had implanted marbles and the two examinations by the medical professionals confirmed this. He also alleges that multiple other inmates were allowed to retain can be inferred from the facts that he did not have access to these marbles without surgery. So he couldn't use them for any nefarious purpose absent conducting surgery on himself to remove them. The marbles were incorporated into and became part of his body when they were implanted. And interestingly, you know, the defendants did not employ any other less detrimental techniques like requiring King to simply keep the implants covered so that other inmates weren't aware of them or if they truly were concerned that they may be keys or other metal using an x-ray or other metal detection techniques to determine. There wasn't any dispute about what they were, was there? No. The doctor, they knew they were marble. Right. And so, you know, it's hard to see where the alleged security justification is supposedly bringing metal or narcotics into the facility. Clearly, that wasn't implicated in this case. And that's what makes Mr. King no different from the other inmates who had pieces of dominoes implanted who were allowed to retain them. So based on King's allegations, it's clear that the stated security interest is protectual. And while courts will defer to legitimate security concerns, that deference afforded to prison administrators does not insulate them from review for actions taken in bad faith. So as alleged in the complaint, the lack of any medical or security justification weighs in favor of finding the search was unreasonable. And so now, unless you have further questions, I'd talk briefly about the Eighth Amendment claim. King's Eighth Amendment claim obviously requires that he meet both an objective and a subjective component. He has to show that he was deprived of a basic human need that was objectively sufficiently serious and that subjectively the officials acted with a culpable state of mind. Objectively, he has clearly alleged physical and emotional injuries that are sufficient to meet the standard. And these also weigh in the manner of the search because they show the pain and suffering that the surgery caused him. He has specifically alleged that the pain and suffering was caused by the surgery and did not occur prior to the surgery. And that pain and suffering included pain and tingling and numbness, stabbing pain that shoots into his stomach when he's and recurring nightmares. The court has found that similar injuries meet the standard in Delonta versus Angelone. For example, this court found that a prisoner satisfied the objective prong where she alleged that the prison's failure to treat her gender identified disorder caused her to suffer nausea, uncontrollable itching and depression, as well as an uncontrollable urge to mutilate herself. King also alleges allegations to meet the culpable state of mind required under the subjective test. A plaintiff can satisfy that standard by showing that the risk of harm that to which he was exposed was obvious. And here it's clear that invasive surgery on a highly sensitive body part like that in this case has obvious risks that you would expect to be the ones realized here, including the pain, tingling and numbness. Those risks were compounded by the fact that here defendants were on notice. They knew that the marbles were not recently implanted and the removal was not medically necessary. And King, as we have discussed, has alleged that he was intentionally coerced to have the surgery without justification. So for those reasons, King has also sufficiently alleged an Eighth Amendment claim. Thank you. May it please the court. On behalf of the appellees, I am here to ask this court to affirm the district court's dismissal under 12 B6 of Mr. King's pro se complaint that was filed under Section 1983. This is a case that is not necessarily involving consent. It is also not involving a right to this case is very novel in its facts and very unique, particularly given the circumstances as alleged by Mr. King. The appellees do not dispute that this analysis and this court's review certainly is de novo, and it is certainly in to be construed in the light most favorable to Mr. King and every allegation that he's asserted. Nevertheless, this is a case involving an inmate who was convicted of an institutional violation, irrespective of what Mr. King now alleges in his complaint, and was charged, convicted and sentenced as a result of the institutional violation for placing foreign objects in his penis. But he didn't place the foreign objects in his penis within the institution, if I'm following you. The institutional violation was a result of Mr. King placing foreign objects in his penis while in the institution. And that was the basis of the conviction and the charge. In fact, the charge was exposing bodily fluids. There was a subsequent, once Mr. King was taken to the hospital, the doctor, according to Mr. King's allegations, as we are to assume them to be true, concluded that they were not infected and did not have to be medically removed. And we do not certainly dispute that they needed to be medically removed. We do believe and certainly do dispute whether there was a penological interest in needing to remove contraband, which was admittedly inside the body of an inmate. Your argument kind of goes like this. The cause implanted in marbles equals contraband, and contraband equals a security threat, implanted in marbles equals a security threat. But you don't say any more. You don't give us any meat on that bone. Well, under the record that Mr. King provided and the grievances that he attached to his complaint, identify, in response to his grievance, a response by the warden and the unit manager that did identify it as a security risk. What the security risk was necessarily does not have to be identified by the jail administration for many reasons. As a public policy reason, a lot of times jail administrators do not want to identify what a particular inmate or inmates could do with particular contraband. Does that mean you don't have to answer the question? No. I can answer the question, and it is analyzed under a rational basis. And there are many rational bases, and it does not have to be one basis. Can you give us one? Sure. One could be, as Mr. King alleges, he is being perceived as a homosexual or other inmates are ridiculing him. It could be for his own protection to keep him from segregation from the general population and keep him in segregation for his protection. That was upheld by this court in Veeney. There are interests in ensuring that individuals perceived to be homosexual are in fact homosexual to protect those individuals under a rational basis. So you said because he had marbles, you perceived him to be a homosexual? No. Absolutely not. Well, that is just one potential rational basis. You call that rational? That is a rational basis, as this court has determined under Veeney, where the court determined it was involved a homosexual inmate, and he alleged that the homosexual population was being treated differently. And the court said there are security interests that could be affected, primarily the security and risk of individuals if there are, for instance, other inmates that will not be, there may be violence perpetrated against those individuals. There are other non-homosexual rational basis which I'm happy to go through. Had there been any manifestation of such? Manifestations of? Violence? Or anything to suggest that to you other than this generalized concern, which I find kind of remarkable because you're acknowledging that your perception that he was a homosexual was a part of the motivation for your behavior. Not at all. I'm sorry, that was it. How did that, how did you not just say that in your response? Because what my point was, assuming what Mr. King is alleging is correct. And that is. No, but the question, well my question. My question is, how are these marbles a security threat? And I understood you to say part of the reason they're a security threat is that people who perceive, he could be perceived as a homosexual and subject to violence on that basis. That is certainly a possibility. That is one potential risk. There are more compelling sexual orientation or the perception of sexual orientation which are certainly much more compelling from a pedagogical standpoint. That includes introducing an individual with contraband in his body could effectively prompt other inmates to do similar, to do similar conduct, to engage in similar conduct. And if it is perceived by other inmates within the general population that they are entitled to do to their bodies what they will and that is outside the jurisdiction of the jail to determine what that contraband is and ensure that it can be confiscated or at least segregated from the general population. That is a significant risk. It's illegal. Oh, that's just it's prohibitive to have tattoos done in prison, correct? Absolutely. Yes. Well, if you come to prison with a tattoo, do you make people remove it? No. Why not? It can be monitored. It is documented and it can be monitored by the jail. He came there with the marbles. He didn't do it there. That is that is that is true. And of course, we are to assume that is to be true. However, the lens of the jail officials back in 2013 when they did this action was in response to an institutional violation that he did not appeal. Mr. King did not appeal. So he was convicted of a charge for exposing bodily fluids when he was discovered in in by the officer reported that he was engaging in inserting objects into his penis. And that violation and subsequent finding that's a violation of exposing bodily fluids. Yes, that was the one that that was the charge that they blew it, bodily fluid, blood, blood or had blood coming out of his penis. Well, cutting open the skin can expose any bodily fluid. Did he cut open the skin? I'm really the reason that I'm baffled here is that I understand when I read and I'll go back and look at this, that he had the marbles inserted in his penis before he was incarcerated. And you're not in your head that we are to assume that we don't agree. But of course, we are to assume that correct. And if that's what we're assuming, then how does the officer discover the exposure of bodily fluids, tattoos or piercings? Which of those things, which of those policy prohibitions did he violate? That's all one policy, but it is which which the exposing of the bodily fluids was what he was charged with as a result of implanting objects. And he was convicted and found guilty of that and sentenced institutionally by the institutional magistrate. And that was not appealed. Now, I do understand, obviously, there does appear to be a there is a question of fact, when were the marbles implanted? We are we are here to readily admit and embrace the facts as alleged by Mr. King, that they were that he came in and was booked with marbles implanted in 2008. Even even assuming that's true, what we need to what the court needs to look at, particularly when we're analyzing this under a qualified immunity analysis, particularly because this was a this is an extremely unique scenario when a jail official or jail officials are looking at the facts and looking at what they need to do in response to an inmate who is found guilty of inserting contraband in his body. What are their alternatives? Recognizing a right, however curtailed it is, but recognizing a privacy right was something that the jail administration did when they offered Mr. King to keep to stay in segregation to make sure that that contraband and that the belief that or the potential perpetration of inmates ideas that they can do this. But you had a policy if other people decided to do it, you could punish them. The doctor who evaluated King said that the marbles had not been recently implanted and there was no medical reason to remove them. And to the extent that you're concerned that the marbles his having these marbles in his body would encourage objectionable behavior on the part of other inmates, you have a policy that prohibit that is applies to the other inmates. This says and you don't you don't even you don't even deny it that he had the marbles in his penis when he came when he was incarcerated. Well we have to assume that but yes that's correct. We're assuming that and the physician said they had not been recently implanted. And assuming all of that. So there were no bodily fluids apparently. Well he was found guilty and the officers acted in response to that finding. What's the relationship between bodily fluids and having surgically implanted marbles? It's just the way that they if for instance if there is a it's usually in the context of either doing piercings in the jail or doing tattoos there are tattoo guns that are smuggled in the jails. That's typically what those what those violations arise from. You agree that they were surgically implanted and they were surgically removed. So yes according to the allegations. There must be some permanency to that. Suppose the inmate shows up with a steel rod in his arm. You gonna make him take it out? Absolutely not. Why not? Make a weapon out of it. Well that would be well for a couple of reasons. One that would be documented upon booking. Two it is medically necessary and if something is medically necessary that is significantly different it's certainly not considered to be contraband. In this case. Even though it it carries with it far greater potential for a threat to security than marbles. But it could be monitored. This instance this goes in a circle. It in a way does go in a circle but that's why there is such significant deference to these jail administrators because as lay individuals we can't come we can't articulate the hundreds of ways that this could potentially cause a risk. For example if as your honor mentioned we have a policy that prohibits implanting contraband in a body certainly. The risk though is if you then if Mr. King was allowed to return to general population and speak with the other inmates regarding what he was allowed to do and the fact that the jail was not prohibited from removing the contraband and confiscating the contraband. Even if the court was to assume that these glass marbles did not pose a risk although they were glass and so could technically be if he wanted to remove them could potentially serve as a weapon. But there are the risk is there are other inmates that could then decide well if the jail cannot contain what I can do to my body the risk is they could decide not to put marbles next time but to put something more dangerous. That's going around in circles. In order for him to get those marbles out he would have to use some other type of contraband such as a razor. That's exactly right. But he didn't but that's not what you're that's not what he's being charged with. Well and and the point is the question the question here is how how did the officers in responding to the conviction of the institutional charge irrespective of whether we are now to 2008 which the investigator the in excuse me the institutional violation was not appealed. We have the the officers were looking at it through that lens and so you have an inmate who has been convicted of a felony and the determination of whether to allow him to return to the general population or not. They gave him the option he did not have to have surgery. He could have just put him in administrative segregation until he changed his mind. They would have to and you are and this is how do you define consent? Well consent under these particular circumstances is is a fairly low threshold because consent in this particular instance is you have a an analysis that based on the allegations as construed by Mr. King while he says that it was coercion understanding that certainly he did not like his alternative being in administrative segregation. Administrative segregation is a lawful option and so when you're analyzing the idea of consent the question then becomes what exactly was it that the defendants did that that were unlawful or coercive and the only thing identified by Mr. King is the is the the threat or the option however it is to be characterized but it's certainly characterized by Mr. King as a threat to keep him away from the general population because he had contraband in his body and that is a lawful option. It's been held lawful routinely by this court and so then even though it's still the the idea of consent is he had two viable options. He did not appeal on any level until after the surgery. He never appealed any of these options and so you have these officers who are acting in an extraordinarily unique situation where you have not even a body a body cavity search but you have a permanent item implanted in an inmate. What does a what do the jail officials do? And so as they're on the ground making a decision their best decision at that time due to the unique situation of exactly what happened was to give him those two options either have the removal or stay in segregation. Counsel when he was convicted what did he give in a set sentence into admin admin sec? He yes he did. And how many days was it? It was 60 days punitive segregation. And he did that? Correct. So then what what occasioned him to get more seg time? Well then it turned into administrative segregation to keep him ensure that the general population is not exposed to the contraband and the potential security threat that could be posed by that contraband. Well let's take let's go back to Judge Gregory's example about somebody who shows up with a tattoo that's fairly inflammatory. You said what you could do is monitor it. Well you knew he had these implants why can't you monitor that? Rather than surgically remove. Because well the reason it couldn't be monitored in this particular situation or a reason it couldn't be monitored is because what it even even if you could monitor marbles and and assuming certainly that let's contemplate a real security risk for these marbles that are implanted into a penis even assuming all of that there are other security risks that are still that are still in existence if inmates believe that other inmates could implant things into their body without repercussion without having them confiscated because if they cannot be confiscated according to you know jail officials when they're assessing this. But you could have someone you could require someone to remove a tattoo. There's no this argument chases its tail. First of all I've yet to hear a legitimate security interest associated with marbles. That's that's the first thing. Marbles that you can't access non-surgically. Well and the only and the only response is to say that it might encourage other people to do other things which could also be monitored. Well but but those other things I mean these are all the hypothetical reasons why we give jails deference those other things could be implanting even more dangerous objects. They could do that anyway without Mr. without Mr. King's marbles. Well but there would be a deterrence the jail would have a deterrence. It has a policy but the policy and they can act on the policy but the policy would not allow for the contraband within somebody's body to be confiscated. If it was a bobby pin or if it was a key why not because Mr. because they wouldn't be allowed to surgically remove it. Well you do have the point that you conceded that Mr. King came in just like the Judge Gregory's example of the person with the inflammatory tattoo came in with it. It wasn't implanted in in in the prison. Which and if that's true what that means is worst case scenario assuming that that's true which we dispute but assuming it's true all that means is that the conviction was wrong that the conviction sort of focus on my question sure which it was and continues to be what happens as a result of not requiring forcing Mr. King to undergo surgery with what what is the necessary parade of horribles that you can't monitor. You would not be able to possibly monitor other inmates that have items in their bodies. You cannot necessarily because they would put it in their bodies and it may not necessarily be no you've already got the you've already got the distinction that he came with the marbles but he I don't tell me about the I just take my question is given you are giving me as a as a justification for the phenological interest the security interest that it might encourage all these other things that are prohibited. Correct. Why can't you enforce why isn't the logical response that you can enforce your own policies? Because. Against the people who are doing them under your control. Because the inmates in jails and this has been recognized look for loopholes routinely in policies and the concern that the jail administrators have during using their discretion and in their within their discretionary. Or you could put them in in administrative segregation for 60 days. Then you still have but the problem is you still have the individuals that have contraband in their bodies that could pose a security risk. Counsel, you know, it's your argument is incredible. Yeah, it really is. He's saying that he was convicted for bodily fluid. The doctor looked at them and your nurse looked at them right then and said these are not recent. Your own nurse. How in the world could anybody possibly conclude that whatever he was doing allegedly with this other person involved bodily fluids? What he healed miraculously within an hour or so? No, your honor. The allegations are false, but we are to assume them to be true. So that's why it's. Allegations false that what did he I'm talking to bodily fluid. How do you how do you get to the blood coming out when you have scar old scar tissue when your own nurse looked at it right after that? How can anybody in their right mind conclude that whatever they were doing involved blood or bleeding? And this is what makes it somewhat unique because I am actually speaking and we are all actually speaking in hypotheticals. No, we're not. Well, and the reason I say that is because the conviction is based is was ration was reasonably based on information that was provided to the jail officials. That is not necessarily in the record. What's in the record is the conviction. All you can say is that he had blood. Well, no, I mean, he there was there's also information that it was done at that time that he did. Yes. So your nurse couldn't even tell that a physician couldn't tell that. Well, that's again, that's that's not that's not accurate. But that's why. But irrespective of whether that's accurate or not, your medical your medical information is inaccurate. No, his allegations are not accurate. I'm not talking about allegations. I'm talking about that. It's in the record that the physician looked at it and said, this is an old surgical procedure. There is no active infection. There is no medical reason for any resection on his penis to remove these objects. That is not his assertion. Those are the undisputed medical facts in the case. Well, my understanding from what you understand, is that correct? Ships in the night. No, no, I'm sorry. I'm sorry. That's not the medical evidence in this case. No, the medical evidence. There has not been any medical evidence aside from his assertions because we are at a just twelve B six motion. And so aside from the complaint and what Mr. King has attached to the complaint that we don't we don't get beyond anything outside of the complaint. And so there is no medical evidence other than the assertions Mr. King has made in the complaint. He asserted that a physician said correct. And your people would have taken him there, right? Absolutely. Yes. Our people did take him to the hospital. And we do know that he didn't have a surgery when he went there the first time. Correct. Why didn't you make him have it? Why did you need consent? Because we wanted to honor whatever privacy right he would be entitled to and ensure that at least the option would be available to him to return to segregation. You have a privacy right for contraband. You mean tell me if someone has a knife and say, no, I'm not going to give this to you and you can't make me open my hand. It's the surgical intrusion. That's the privacy. Oh, that's what it is. So. So you recognize that you knew you had to have that consent. I think that it would be. I certainly. Yes, absolutely. Therefore, you've been devised a way to psychologically suborn his voluntary his volition and said, we're going to keep you here for the whole time, not allow you to have to make a objection to your parole. That's what he says until you agree to this surgery. That is that was the those were the options. Yes, that were given to him if he wanted to avoid the surgery. Correct. To be able to confiscate the contraband. So you're supposed to stay in prison longer because because of this. No, no, no. He wouldn't. Yes, he would. If you if you go up there and purposely object to his parole, he does. Well, solely for the reason that he will not allow you to invade his privacy. Why is that not? Because all of the courts have held that comments like that are not themselves actionable when there is no because there is no because of his parole, simply saying. And this is I mean, this is true when you're talking about simply a consequence. I know that on the face, it seems, well, you know, you're being thrown in SAG or you're being told you have to have surgery. But when you're looking at it from a jail perspective, they the jail perspective, I would understand that. I think maybe even on the merits. But I do believe that based on qualified immunity, given how novel this is, there is no clearly established law throughout the country that addresses the contours of the right. That is an issue. And here, which is very specific of an inmate, but very egregious. Well, it's it's it it does appear egregious. However, you also have to take it in the context of the surgery that was prompted by insertion of the right to protect the general population from the risks of inmates having contraband in their person. The court has no further questions. Thank you. Thank you so much. You have some time. I'd like to just briefly address the argument on qualified immunity. As the Supreme Court emphasized in Hope versus Peltzer, officials can still be on notice or conduct violates established law, even in novel factual situations. As we discussed in our briefing, pursuant to the Supreme Court's prior precedence in Bell, which this court applied in U.S. versus Edwards in 2011 and the Winston case, which clearly addressed a surgery to attempt to find evidence, a reasonable officer would have known that a wholly unjustified, sexually invasive surgery would violate the Fourth Amendment. Because that is what King has alleged here, there is no qualified immunity defense available at the motion to dismiss stage for these defendants. Unless you have further questions. But I'm not sure we have jurisdiction because we said when this factual question to resolve and when counsel tells me we had to point here, we can't even agree that the doctor ever said made any opine anything about this situation. Well, Mr. King clearly alleged in his complaint multiple times that the implants were in place prior to his incarceration. He also alleged that he attempted to make the defendants aware of that when he was incarcerated and that the officer refused to note the implants on his records. So, you know, at this motion to dismiss stage, where we take those allegations as true, the defendants dispute about that simply isn't relevant. Thank you very much. We're going to ask a clerk to adjourn the court for today and they will come down and greet. This court stands adjourned until tomorrow morning. God save the United States and it's honorable court.
judges: Roger L. Gregory, Allyson K. Duncan, Henry F. Floyd